## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

**Civil Case No. 13-1011 (SRN)**

Edward Jonak, d/b/a Affordable Law
Center, Christian Discount Attorney
Services, American Lawworx,
Affordable Court Services, and
Action Plan RX,

**MEMORANDUM
OPINION & ORDER**

Appellants,

v.

Daniel M. McDermott, Trustee,

Appellee.

---

Eric A. Rice, Law Office of Eric A. Rice, LLC, 155 South Wabasha Street, Suite 100, St. Paul, Minnesota 55107, for Appellants

Sarah J. Wencil, Department of Justice, Office of United States Trustee, 1015 United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415, for Appellee

---

SUSAN RICHARD NELSON, United States District Judge

Appellants Edward Jonak, Affordable Law Center ("ALC"), Christian Discount

Attorney Services, American Lawworx, Affordable Court Services, and Action Plan RX

(collectively, "Mr. Jonak") appeal from a March 29, 2013 ruling of the United States

Bankruptcy Court for the District of Minnesota ("Bankruptcy Court") in the matter of

McDermott v. Jonak (In re Shadley), 10-BKY-050795, 10-ADV-5031.  (Notice of Appeal

[Doc. No. 1].)  The underlying Bankruptcy Court Order (the "Order" [Doc. No. 13 at 25])

granted Appellee's/Plaintiff's summary judgment motion.  Judgment was likewise

entered on March 29, 2013.[1]  (Judgment [Doc. No. 13 at 79].)  For the reasons set forth

herein, Mr. Jonak's appeal is denied.

## I.   BACKGROUND

This case arises from an adversary bankruptcy proceeding filed by Appellee, the

United States Trustee ("Trustee").  The Trustee is an official of the United States

Department of Justice appointed by the Attorney General to supervise the administration

of bankruptcy cases.  28 U.S.C. §§ 581-89.   Pursuant to 11 U.S.C. § 307, the Trustee has

standing to appear and be heard on any issue in a bankruptcy case.  Thompson v.

Greenwood, 507 F.3d 416, 420 n.3 (6th Cir. 2007).   In the bankruptcy action, the Trustee

alleged that Mr. Jonak and his business entities functioned as bankruptcy petition

preparers and debt relief agencies and engaged in the unauthorized practice of law, in

violation of 11 U.S.C. §§ 110 and 526.  (APP1-20, Compl.)

### A.   Factual Background

Mr. Jonak, who is not an attorney, is the sole shareholder, president and operating

principal of 3rd Millennium Systems, Inc., doing business as ALC.[2]  (APP21, Stip. of

Facts ¶¶ 2-3, 5 [Doc. No. 55].)   ALC is not a law firm nor does it employ counsel

admitted to practice in the United States District Court for the District of Minnesota.  (Id.

---

[1]  The Order is found in this Court's docket as an attachment to Appellants' Brief [Doc. No. 13 at 25].  In the instant opinion, all page citations to the Order refer to the Order's internal page numbers.

[2]  In the underlying action, 3rd Millennium Systems, Inc. was a party, but it is not a party in this proceeding.  As the Bankruptcy Court noted in its Order, at various times, 3rd Millennium used the ALC trade name.  (Order at 2.)   Accordingly, any references to 3rd Millennium in the underlying Order apply equally to ALC here, unless otherwise noted.

¶ 5.)  Jonak maintains or has maintained offices in Hibbing, Blaine, Brainerd, and Bloomington, Minnesota.  (Id. ¶ 4.)  He was previously enjoined from acting as a bankruptcy petition preparer in the United States Bankruptcy Court for the District of Colorado.  (Id. ¶ 26.)

Among the services that ALC provided customers were legal services plans for various subject matters, including bankruptcy.  (Id. ¶ 7; APP43, Jonak Dep. at 6.)  As set forth in the parties' Stipulation of Facts, advertisements for ALC's services used the word "law."  (APP23, Stip. of Facts ¶ 8.)  Mr. Jonak utilized the following forms of advertising:

- A website at www.affordablelawcenter.com, wherein its mission is declared to be: "provide low cost legal aid to those seeking to avoid potentially costly and unnecessary legal fees."  Services include "Bankruptcy Programs" and "program attorneys".  The Defendant offers "a range of services from bankruptcy and credit repair to debt settlement programs at a reasonable cost to those seeking help."  The Defendant offered debtors the opportunity to achieve "a low cost bankruptcy discharge" and avoid "contend[ing] with overly expensive bankruptcy fees charged by many attorneys and lawyers."

- Signs located in Princeton, Zimmerman, Blaine, and Goodland, Minnesota.

- Building signs outside of Brainerd, Blaine, and Hibbing, Minnesota locations.

- Phone book listings under "Attorneys, Bankruptcy."

- Craigslist [postings] under "legal services."

- Newspaper advertisements, with representations such as "Affordable Law Center!  Bankruptcy just $680!  Divorce/Custody $530!" Civil/Criminal etc."  Newspaper ads have appeared [in] such publications as Manny's Shopper, Northland Press, Anoka Shopper and possibly others.

(Id.)

The following bankruptcy debtors ("Debtors") are persons who paid a fee to Mr.

Jonak and are named in the underlying adversary complaint:

| Name | Case No. | Filing Date | Fee Paid | Net Income |
|------|----------|-------------|----------|------------|
| Kersting, Gayle | 10-50379 | 3/23/10 | 363 | 1314.43 |
| Carter, Cheryl | 10-50983 | 7/16/10 | 363 | 1484.47 |
| Wilson, Larry & Karmen | 10-50972 | 7/15/10 | 580 | 2271.83 |
| Pankiewicz, Alan | 10-51033 | 7/27/10 | 680 | 4000.38 |
| Mattfield, Robert | 10-51042 | 7/28/10 | 511 | 2789.00 |
| Boutin, Lorna | 10-51032 | 7/27/10 | 580 | 1365.62 |
| Rytty, Arne & Linda | 10-50838 | 6/16/10 | 580 | 3069 |
| Gjestvang, Michael | 10-51084 | 8/5/10 | 511 | 3856.84 |
| Francisco, Kim & Kristi | 10-51095 | 8/6/10 | 680 | 5383.74 |
| Shadley, Jamie | 10-50795 | 7/28/10 | 511 | 3597.34 |
| Bushman, Albert | 10-50794 | 6/8/10 | 363 | 4888.23 |
| Cavanaugh, Kevin | 10-50837 | 8/16/10 | 511 | 1526.00 |
| Charnley, Michaele & Stephen | 10-51104 | 8/9/10 | 580 | 1656.22 |
| Cohen, Telaine | 10-51118 | 8/11/10 | 463 | 1700 |
| Perry, Michelle & Clark | 10-35329 | 7/21/10 | 511 | 2081.70 |
| Sinn, Jessica | 10-45429 | 7/29/10 | 580 | 1974.44 |
| Smith, Jennifer | 10-45585 | 7/29/10 | 511 | 1746.27 |
| Freeman, Thomas & Stella | 10-45120 | 7/8/10 | 511 | 3104.00 |

(Id. ¶ 9.)   Most of the Debtors testified that they first approached Mr. Jonak after seeing

an advertisement for affordable bankruptcy services.  (Id. ¶ 10.)  After customers

contacted Mr. Jonak, he advised them that ALC offered "different programs to assist with

any legal issue."  (Id. ¶ 11.)  Approximately two-thirds of ALC's clients met with Mr.

Jonak in person, while the rest communicated with ALC via the mail or internet.  (Id.)

Each of the Debtors filed for Chapter 7 bankruptcy, with the exception of Mr.

Pankiewicz, who filed a Chapter 13 petition.  (Id. ¶ 14.)   All of the Chapter 7 Debtors

received bankruptcy discharges.  (Id. ¶ 25.)  With the exception of Debtor Alan

Pankiewicz, all of the Debtors proceeded *pro se.*  (Id. ¶ 15.)  Mr. Pankiewicz's legal

counsel was not associated with Mr. Jonak.  (Id.)

When providing services to ALC's clients, Mr. Jonak first explained the ALC

program.  (Id. ¶ 12.)  ALC offered a one-year bankruptcy legal services program to

provide the procedures necessary for prospective debtors to proceed with bankruptcy.

(Id.)  For example, Mr. Jonak asked clients to gather all of their relevant information,

provided pre-bankruptcy counseling, and informed the Debtors that while Jonak was the

program administrator, he contracted with attorneys who could provide legal counsel and

representation to Jonak's clients.  (Id.)

Mr. Jonak required clients, including the Debtors here, to read a document

detailing the benefits offered under the plan (the "Program Benefit" form"), sign an

acknowledgment (the "Acknowledgment" form), and pay Jonak's fee up-front.  (Id.)

The Program Benefits document touted ALC's services:

Person/Business Legal Consultations!  Just pick up the telephone and we

will provide you an independent attorney for your free consultation.  Peace of mind for your decisions!  Once you have your options, choosing how to proceed is much easier.  You may proceed Pro Se or retain the program attorney at discounted rates.

(APP123 [Jonak Dep., Ex. 7].)

The individual contracts between the Debtors and ALC indicated that ALC would provide the following services: (1) debt review/negotiation or debt negotiation guidance; (2) bankruptcy filing (as needed or requested); (3) post-bankruptcy credit guidance; (4) social security/disability assistance; and (5) one-year legal plan benefits.  (APP27, Stip. of Facts ¶ 17.)   Debt negotiation or settlement assistance involved referral to an attorney because ALC and Mr. Jonak were not licensed as a debt settlement service with the Minnesota Department of Commerce.  (Id. ¶ 18.)   Mr. Jonak performed post-bankruptcy guidance, which involved guiding the Debtors "at no charge to follow through on certain things that they could do to improve their credit report."  (Id. ¶ 19.)   Mr. Jonak admits that he is not accredited as a credit counseling provider by the Counsel on Accreditation, the Bureau Veritas Certification North American or BSI Management Systems American, Inc. (Id.)  Nor is Mr. Jonak or his entities registered as a credit services organization in Minnesota.  (Id.)

Mr. Jonak asked Debtors to complete a questionnaire (the "Questionnaire") prepared by a bankruptcy petition processing center that operated independently from ALC and Mr. Jonak.  (Id. ¶12.)   The Questionnaire was designed to assist the processing center in typing the bankruptcy petition and related schedules.  (Id.)   The Questionnaire was very similar to official bankruptcy forms.  Cf. APP77 (Jonak Dep., Ex. 6) with Fed.

R. Bankr. P. Official Form 6B, Personal Property.   Mr. Jonak apparently provided the Questionnaire in some cases, although sometimes the processing center provided it to Debtors directly.  (APP25, Stip. of Facts ¶ 12.)   For all but one Debtor, the processing center that Jonak used was called Justin Jurist/Aleutian Enterprises, located in Winter Harbor, Maine.[3]  (Id. ¶ 16.)

The Acknowledgment form provided by Mr. Jonak indicated that "Affordable Court Services is a membership group allowing access to resources for all legal, tax, financial issues."  (APP125, Jonak Dep., Ex. 7.)  Mr. Jonak required the Debtors to sign a disclaimer that they had not received legal advice.  (Id.)   He further required the Debtors to sign a disclaimer stating that "I do not believe the adverti[s]ing I responded to was misleading in [any way]."  (APP126, Jonak Dep., Ex. 7.)

Debtors also received a list of federal and Minnesota tax exemptions, either from Mr. Jonak or the processing center.  (APP25, Stip. of Facts ¶ 12; APP131-34.)  On the cover page of this document, which stated, "Attention: All Affordable Law Center Members," Debtors were asked to select one of the exemptions.  (APP131.)

After the Debtors completed the Questionnaire, Mr. Jonak sent it to the processing center.  (APP25, Stip. of Facts ¶ 12.)  Using the information provided on the Questionnaire, the processing center physically typed the bankruptcy documents, charging the Debtors a separate fee.  (Id.)  The Justin Jurist processing center charged the Debtors $69 for processing services, with the exception of Mr. Pankiewicz, who was

---

[3] The exception was Debtor Gayle Kersting, whose documents were typed by Alana Strother of Atlanta Paralegal, LLC in Lawrenceville, Georgia.  (Id. ¶ 16, n.3.)

charged $159 because of his Chapter 13 filing.  (Id. ¶ 16.)   After the processing center

typed the bankruptcy documents, Mr. Jonak then referred the Debtors to a credit

counseling organization and instructed them on how to obtain a free credit report.  (Id. ¶

12.)   Thereafter, if Debtors contacted Mr. Jonak with issues related to bankruptcy, he

would direct them to a resource center or program attorney.[4]  (Id.)  However, as noted,

Mr. Jonak also provided post-bankruptcy guidance by instructing Debtors on how to

improve their credit reports.  (Id. ¶ 19.)  Mr. Jonak testified that clients participating in the

bankruptcy plan would receive full access to law firms, referrals to tax accountants, and

other discounts.  (Id. ¶ 12.)

Official Bankruptcy Form 7, provided by the Administrative Office of the United

States Courts, is known as the "Statement of Financial Affairs."   On this form, debtors

are required to disclose payments related to debt counseling or bankruptcy:

> List all payments made . . . on behalf of the debtor to any persons, including
> attorneys, for consultation concerning debt consolidation, relief under the
> bankruptcy law or preparation of a petition in bankruptcy within one year
> immediately preceding the commencement of this case.

(Bankr. Docs. SOFA #9.)   In the Debtors' Chapter 7 bankruptcy filings, the Debtors

disclosed no attorneys as having received a fee or entered an appearance on their behalf.

(APP28, Stip. of Facts ¶ 21.)   Mr. Jonak's services were disclosed only in the bankruptcy

schedules or statements of Debtors Carter, Bushman, Kersting.  (Id. ¶ 23.)

---

[4] Mr. Jonak has been associated with the following attorneys in connection with his bankruptcy services: Greg Bilz, Dan Batten, Theresa Bailey, Karla Kluzak, Urosh Piletich, Greg Gilbert, John Hedtke, Kyle Lewis, Michael Gerlack, Matthew Beaumier, Sean Linnan, and Matt Lund. (Id. ¶ 22.)

Pursuant to 11 U.S.C. § 341, a United States bankruptcy trustee is required to convene and preside at a meeting of creditors, at which the debtor is likewise required to appear.  At the meeting, the trustee is to question the Chapter 7 debtor under oath to ensure that the debtor understands various aspects of filing for bankruptcy.  11 U.S.C. § 341(d)(1)-(4); 11 U.S.C. § 343.  With respect to the Debtors here, no attorneys appeared on their behalf at the meetings of creditors.  (APP28, Stip. of Facts ¶ 21.)  However, with respect to a *pro se* questionnaire that *pro se* debtors are required to complete at their meeting of creditors, 12 of the 18 Debtors listed ALC as the entity that "assisted me with my bankruptcy filing."  (APP1319, 1327, 1344, 1352, 1376, 1384, 1400, 1408, 1416, 1431, and 1439.)   At Debtor Jamie Shadley's meeting of creditors, he testified that Jonak "would help me through the process of bankruptcy," by giving Shadley the "paperwork that I needed, the correct paperwork that I needed to fill out and if I had any questions that I would be able to find somebody that would answer them . . . ."  (APP241, Shadley Tr. at 13.)

The Bankruptcy Court noted in the Order that Mr. Jonak undertook the following actions or gave the following advice to the Debtors:

    a.      As to the matter of claiming exemptions for a bankruptcy filing, "we could only do one or the other, we couldn't do both, state or federal . .. ."  (Gjestvang Tr. 15.)

    b.      As to (in the U.S. Trustee's query) ". . . how the exemptions work," Jonak "just showed me numbers, what each of them meant . . . ." (Cohen Tr. 8.)

    c.      ". . . how it all worked, I just kind of wanted to make sure, . . . and [Jonak] just kind of explained it to me, and I kind of went from there on my deciding that I'd do it . . . ."  (Sinn Tr. 11.)

d.      As to claiming the homestead exemption of 11 U.S.C. § 522(d)(1), Jonak "probably explained it to me, and I went by what [Jonak] said," after Jonak "asking me about how much all my stuff was worth . . . [and] I told [him] what it was worth . . . ." (Mattfield Tr. 12-13.)

e.      "That I could either file federal or state" as to claiming exemptions, "but with my home, [Jonak] said that I should probably file state," which statement (from Jonak) the debtor termed "giving [me] some advice in that regard." (Pankiewicz Tr. 21.)

f.      That, by proceeding under Chapter 13, "on my child support that you know, I'm in arrears 39 thousand over my payment plan, I would pay 12 thousand, and that would be it, it would go away." (Pankiewicz Tr. 26.)

g.      That a debtor who used a four-wheeler "at work at times, because I'm a project superintendent, so I cover a lot of territory," should "put that under like tools" as exempt--"or, you know, there was a state write-down for allotment for tools and stuff like that, [Jonak] told me to put the four-wheeler under that . . . ." (Pankiewicz Tr. 28.)

h.      That the debtor could "keep" his or her house while going through bankruptcy. (Boutin Tr.14; Mattfield Tr. 14; Pankiewicz Tr. 27.)

i.      " . . . what chapter 7 is and what is 13 . . . ." (Carter Tr. 13.)

j.      " . . . because I filed some student loan papers on there, student loan ones and [Jonak] said those may not be dischargeable. . . ," (Carter Tr. 13), and nonetheless, "to just put them down just in case I can get them discharged . . . ." (Id. 14.)

k.      ". . . if I wanted to keep my home, because I was behind on my, some payments, that I would have to of course catch them up . . . ." (Carter Tr. 14.)

l.      ". . . I shouldn't have no problem with my bankruptcy because I owe up so much that I can hardly make any payments . . . ." (Mattfield Tr. 15.)

(Order at 18-19.)   At least six of the Debtors were confused as to whether ALC was a law

firm or whether Mr. Jonak was a lawyer.  (Id. at 16) (citing Rytty Tr. 10; Smith Tr. 6, 11;

Bushman Tr. 9; Gjestvang Tr. 13; Mattfield Tr.13; Pankiewicz Tr. 22).

### B.    Procedural History

After conducting an investigation of Mr. Jonak's conduct in the underlying

bankruptcy cases, the Trustee filed its Complaint against Jonak and his entities in

Bankruptcy Court.  (APP1-20, Compl.)   In the Complaint, the Trustee alleged that Jonak

violated five sections of 11 U.S.C. § 110, applicable to petition preparers, for: failing to

sign documents; failing to provide the required notice to debtors; failing to place

identifying numbers on the petitions; using the word "legal" in his advertisements; and

failing to file a declaration documenting the fees that he received.  (Compl. at 13.)  In

addition, the Trustee alleged that Jonak violated 11 U.S.C. § 526(a), applicable to debt

relief agencies, by failing to perform the promised services; by making false statements;

by misrepresenting his services; and by advising at least one debtor to incur more debt.

(Id. at 13-14.)  Lastly, the Trustee alleged that Jonak violated 11 U.S.C. § 527 by failing

to provide the required notices, and violated § 528 by failing to identify his company as a

debt relief agency.  (Id. at 14.)  In relief, the Trustee sought to enjoin Jonak from

engaging in further violations of the law and also sought the imposition of statutory fines

and penalties.  (Id. at 16-18.)

In his Answer, although Mr. Jonak admitted that he did not disclose his

participation in each debtor's case or comply with § 110, he denied that § 110 applied.

(McDermott v. Jonak, 10-BR-05031, Answer at ¶¶ 93-98 (Bankr. D. Minn. [Doc. No. 8].)

Jonak asserted that he did not physically prepare the bankruptcy documents and therefore

was not a bankruptcy petition preparer.  (Id.)  Similarly, he denied that he was a debt

relief agency and therefore was not subject to §§ 526-28.  (Id. ¶¶ 99-108.)

Ruling on the Trustee's summary judgment motion, Chief Bankruptcy Judge

Gregory F. Kishel found that Jonak and his entities functioned as bankruptcy petition

preparers, were subject to the requirements of § 110, and violated several provisions

under the statute.  (Order at 25-33.)  In addition, the Bankruptcy Court determined that

Mr. Jonak offered and furnished legal advice and engaged in the unauthorized practice of

law under § 110 as well as Minn. Stat. § 481.02, Subd.1.  (Id. at 23, 33-36.)   The

Bankruptcy Court also found that Mr. Jonak engaged in fraudulent, unfair, and deceptive

acts prohibited by § 110.  (Id. at 36-38.)  As to the Trustee's claims under §§ 526-28, the

Bankruptcy Court determined that ALC qualified as a debt relief agency and was

therefore obliged to comply with §§ 526-28 of the Bankruptcy Code.  (Id. at 38-40.)  The

Bankruptcy Court found that Mr. Jonak violated the provisions concerning clear and

conspicuous disclosures in advertising and in services to be rendered.  (Id. at 40-41.)  In

addition, Mr. Jonak was found to have misrepresented the services provided, fostered the

filing of untrue or misleading completed bankruptcy forms, and failed to provide various

notices and disclosures to the Debtors  (Id. at 41-44.)  Accordingly, pursuant to § 110 and

§ 526, the Bankruptcy Court enjoined him from committing any future violations of § 110

and § 526, and pursuant to § 110, the Bankruptcy Court ordered the forfeiture and

turnover of fees received.  (Id. at 45-48.)   The Trustee was also awarded liquidated

damages under § 110(i)(1)(B).  (Id. at 47-48.)

On appeal to this Court, Appellants raise three issues.  First, they argue that they did not violate § 110 because they are not bankruptcy petition preparers.  (Appellants' Br. at 9-13 [Doc. No. 13].)   Second, even though they now concede that they are a debt relief agency, Appellants assert that the Bankruptcy Court erred when it found that they violated multiple sections of §§ 526-28.  (Id. at 13-16.)  Third, Appellants contend that even if they violated §§ 110 and 526, the injunction is overly broad and should be limited to bankruptcy-related activities.  (Id. at 17-18.)

## II.   DISCUSSION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(2).  The Bankruptcy Court's Order and Judgment on the underlying summary judgment motion were issued on March 29, 2013.  Appellants' appeal is timely as the Bankruptcy Court extended the time for appeal pursuant to Fed. R. Bankr. P. 8002(c) on September 5, 2013.

In an appeal from a bankruptcy court proceeding, the Court acts as an appellate court.  See 28 U.S.C. § 158(a). The Bankruptcy Court's legal conclusions are reviewed de novo and its findings of fact are reviewed for clear error.  Tri–State Fin., LLC v. First Dakota Nat'l Bank, 538 F.3d 920, 923–24 (8th Cir.2008); accord Fed. R. Bankr. P. 8013. A bankruptcy court's entry of summary judgment is reviewed by a district court de novo. Tudor Oaks Ltd. P'ship v. Cochrane (In re Cochrane), 124 F.3d 978, 981 (8th Cir. 1997).

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a), as incorporated by Fed. R. Bankr. P. 7056.  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to

the nonmoving party.  Enter. Bank v. Magna Bank of Missouri, 92 F.3d 743, 747 (8th Cir.

1996).  The moving party bears the burden of showing that there is no genuine issue of

material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c),

as incorporated by Fed. R. Bankr. P. 7056; Celotex Corp. v. Catrett, 477 U.S. 317, 323

(1986); Enter. Bank, 92 F.3d at 747.  A party opposing a properly supported motion for

summary judgment may not rest on mere allegations or denials, but must set forth specific

facts in the record showing that there is a genuine issue for trial.  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 256 (1986).  If a party fails to support an assertion of fact or

fails to properly respond to another party's assertion of fact as required by Rule 56(c), the

court may "grant summary judgment if the motion and supporting materials – including

the facts considered undisputed – show that the movant is entitled to it. . . ."  Fed. R. Civ.

P. 56(e)(3), as incorporated by Fed. R. Bank. P. 7056; Celotex, 477 U.S. 322-23.

## A.      Section 110: Bankruptcy Petition Preparer

Section 110 of the Bankruptcy Code provides for the imposition of certain

penalties applicable to persons who negligently or fraudulently prepare bankruptcy

petitions.  11 U.S.C. § 110.  Under the Code, a "bankruptcy petition preparer" is defined

as "a person, other than an attorney for the debtor or an employee of such attorney under

the direct supervision of such attorney, who prepares for compensation a document for

filing" in a bankruptcy case.  Id. § 110(a).  A "document for filing" refers to "a petition or

any other document prepared for filing by a debtor" in a bankruptcy court or United

States district court in connection with a bankruptcy case.  Id. § 110(b).  Bankruptcy

petition preparers are required to notify debtors in writing that they are not attorneys and

to provide their identifying information to the courts on any bankruptcy documents, sign all such documents, provide copies of the documents to the debtors, and file a fee disclosure statement.  Id. § 110 (b), (c), (d) & h(2).

In addition, Section 110 prohibits certain conduct by petitioner preparers that may be misleading or harmful to debtors, such as engaging in the unauthorized practice of law by providing legal advice, advertising bankruptcy petition preparer services with the word "legal" or similar terminology, collecting court filing fees from debtors, and violating applicable state statutes prohibiting the unauthorized practice of law.  Id. § 110(e)(1), (e)(2), (f), (g), & (k).  As to the prohibitions against legal advice, § 110(e)(B)(i)-(vii) bars a bankruptcy petition preparer from offering a potential bankruptcy debtor advice on any of the following:  whether to file a petition or whether commencing a case under Chapter 7, 11, 12, or 13 is appropriate; whether the debtor's debts will be discharged; whether the debtor will be able to retain a home, car or other property after commencing bankruptcy proceedings; the tax consequences of a bankruptcy case and the dischargeability of tax claims; whether the debtor should promise to repay debts to a creditor; how to characterize the nature of the debtor's property interests or debts; and bankruptcy procedures and rights.

Minnesota state law also prohibits the unauthorized practice of law.  Minn. Stat. § 481.02, Subd. 1.[5]  The Bankruptcy Court found that in six of the 18 cases at issue, Mr.

---

[5]  The Minnesota statute against the unauthorized practice of law provides:

> It shall be unlawful for any person or association of persons,
> except members of the bar of Minnesota admitted and

Jonak engaged in the unauthorized practice of law within the scope of Minn. Stat. §
481.02, Subd. 1, contrary to 11 U.S.C. § 110(k), and gave legal advice, in violation of 11
U.S.C. § 110(e)(2).  (Order at 23.)  Although Mr. Jonak is not an attorney, the Bankruptcy
Court concluded that he gave "advice as to the bankruptcy process, the substantive law of
bankruptcy, and the effect of both on those debtors' options in filing for bankruptcy."
(Id.)  Appellants do not directly challenge this determination on appeal.

As one court has observed, "So what does § 110 tacitly permit?  The answer in a
nutshell is 'not much.'"  In re Grissett, No. 07-41510-R, 2008 WL 4553083, at *4 (Bankr.
E.D. Mich. Oct. 8, 2008).  Rather, § 110 "proscribes virtually all conduct falling into the
category of guidance or advice, effectively restricting 'petition preparers' to rendering
only 'scrivening/typing' services."  Id.  As the Grissett court noted, the case law makes it

---

licensed to practice as attorneys at law, to appear as attorney
or counselor at law in any action or proceeding in any court in
this state to maintain, conduct, or defend the same, except
personally as a party thereto in other than a representative
capacity, or, by word, sign, letter, or advertisement, to hold
out as competent or qualified to give legal advice or counsel,
or to prepare legal documents, or as being engaged in
advising or counseling in law or acting as attorney or
counselor at law, or in furnishing to others the services of a
lawyer or lawyers, or, for a fee or any consideration, to give
legal advice or counsel, perform for or furnish to another legal
services, or, . . . , or, for a fee or any consideration, to prepare
for another person, firm, or corporation, any other legal
document . . . .

Minn. Stat. § 481.02, Subd. 1.

"abundantly clear that providing anything more than typing services is prohibited under §
110." Id.

When a bankruptcy petition preparer violates sections 110(b)-(g) or charges a fee
found to be unreasonable, courts may order that the fee be returned to the bankruptcy
estate.  11 U.S.C. § 110(h)(3)(B).  If the preparer fails to comply with the court's order, a
$500 fine may be assessed.  Id. § 110(3)(A)(5).  If the preparer is found to have
committed a fraudulent, unfair, or deceptive act, "the court shall order the bankruptcy
petition preparer to pay the debtor –  (A) the debtor's actual damages; (B) the greater of –
(i) $2,000; or (ii) twice the amount paid by the debtor to the bankruptcy petition preparer
for the preparer's services; and (C) reasonable attorney's fees . . . ." Id. § 110(j).

Although Jonak and 3rd Millennium admitted in their Answer that they failed to
comply with certain provisions of § 110, they argued in opposition to the Trustee's
summary judgment motion that § 110 is wholly inapplicable to them, as they are not
bankruptcy petition preparers.  (See Order at 32.)    Rejecting this argument, the
Bankruptcy Court considered ALC's "'business model' and the functional aspect of its
actual, proven performance for the debtors within the eighteen cases."  (Id. at 27.)
Specifically, the Bankruptcy Court pointed to Jonak's involvement in the preparation and
structuring of the necessary information, "not to mention his direct intervention in the
debtors' substantive elections and choices for the bankruptcy process."  (Id. at 31.)  Chief
Bankruptcy Judge Kishel found that these actions made Mr. Jonak a bankruptcy petition
preparer, in that virtually every act that Jonak did "aided the physical preparation of the
bankruptcy petition" that his customers eventually filed.  (Id.)   The Bankruptcy Court

noted that "[e]ven acting as a passive conduit toward someone who does the actual typing, via ostensible 'referral' in the role of a 'resource center,' is enough to tie a participant into petition preparer status – where the intermediary receives payment and certainly where the channeling is directly to a single typist without the offer of a choice." (Id. at 29-30).

The Bankruptcy Court's ruling is consistent with Eighth Circuit authority.  The Eighth Circuit in In re Garrison, 208 F.3d 217, No. 98-2714, 2000 WL 276975, at *3 (8th Cir. March 15, 2005), held that a party who received money from a debtor in exchange for bankruptcy filing assistance and merely "caused" the petition papers to be typed, was a bankruptcy petition preparer.  As the Trustee correctly observes, here, Mr. Jonak did far more than simply cause the Debtors' papers to be typed.  (Appellee's Br. at 24 [Doc. No. 25].)

Other courts have concluded that "[v]arious petition preparers across the country have attempted to evade . . . regulations [such as § 110] by characterizing their services as something other than bankruptcy petition preparation."  In re McCrary, No. 12-56446, 2013 WL 2947902, at *4 (E.D. Mich. June 13, 2013) (citing Ferm v. United States (In re Crowe), 243 B.R. 43 (B.A.P. 9th Cir. 2000); In re Landry, 250 B.R. 441 (Bankr. M.D. Fla. 2000)).  Accordingly, "[i]t is important to focus on the substance of the preparation services, rather than their form."  Id.  Here, the Bankruptcy Court conducted just such an analysis, concluding that "Jonak and his whole enterprise structure qualify as a bankruptcy petition preparer because of what he actually *did*, regardless of what he *called* his operation."  (Order at 27.)

The court in <u>In re Duran</u>, 347 B.R. 760 (Bankr. D. Colo. 2006), similarly considered the underlying structure of an entity that called itself "Legal Aid Network." In the multi-party structure of Legal Aid Network, one person, Mr. Brown, was manager and part owner, while another person, Ms. Johnson, typed the signed bankruptcy documents. <u>Id.</u> at 763-65.  Regardless of how Mr. Brown characterized his business, the court found it to be more than simply a referral agency, but rather, found it to be a bankruptcy petition preparer, subject to the requirements of § 110.  <u>Id.</u> at 766-67.  Notably, the court observed that Mr. Brown: set the fee for the bankruptcy petition work; was the point of contact for customers by virtue of Legal Aid Network's advertisements; selected the person to complete the contracted-for work; entered into an after-the-fact agreement with Ms. Johnson to make it appear that she was an independent contractor; and directed all of the activities of Legal Aid Network.  <u>Id.</u> at 765-66.  The Bankruptcy Court properly found many of the facts and conclusions of <u>Duran</u> directly applicable to Mr. Jonak.  (Order at 30-31.)   The court in <u>In re McCrary</u> enumerated similar non-exclusive factors as determinative of whether an entity is a bankruptcy petition preparer:

> (a) whether it collected money from the debtor, (b) whether it engaged in any conduct defined as unauthorized practice of law or otherwise in violation of § 110 or related rules; (c) whether it encouraged or otherwise played an integral role in allowing another party to violate any such rules; (d) whether it acted as the "point of contact" or liaison between the debtor and the preparer; (e) the extent to which it acted in concert with the preparer; and (f) the extent of the preparer's control over the referring party, i.e. whether there exists an agency or employment relationship.

2013 WL 2947902, at *4.

The record here amply supports the Bankruptcy Court's ruling that Appellants were bankruptcy petition preparers and that their actions violated § 110: Mr. Jonak collected fees of $363 to $680 from the Debtors (APP23, Stip. of Facts ¶ 9); he used the trade name "Affordable Legal Services," <u>see</u> <u>In re Ali</u>, 230 B.R. 477, 482 (Bankr. E.D.N.Y. 1999) (holding that use of words "law" and "court" gave clients the impression that legal services were offered); advertised directly to persons needing bankruptcy services in ads under the category of "Bankruptcy"; Mr. Jonak was the direct point of contact between the Debtors and the ALC-selected typists; he handed out documents on behalf of the typists, including, in some cases, the typists' Questionnaire; he entered into service contracts for "Bankruptcy processing (start to finish)" (<u>see</u>, <u>e.g.</u>, APP137); and Jonak provided a list of federal and state tax exemptions to the Debtors, directing them to select one.  (APP131-34.)    Most of the Chapter 7 Debtors' *pro se* questionnaires identified Mr. Jonak as a person who assisted them.  (APP1317-1458.)  Moreover, at least six Debtors were confused as to whether Mr. Jonak was an attorney.  (Order at 16) (citing Rytty Tr. 10; Smith Tr. 6, 11; Bushman Tr. 9; Gjestvang Tr. 13; Mattfield Tr. 13; Pankiewicz Tr. 22.)  Several Debtors testified that Jonak provided substantive advice regarding the claiming of various exemptions, the effect of Chapter 13 bankruptcy on child support obligations, whether student loans were dischargeable, and whether the Debtor would be able to keep a house.  (<u>Id.</u> at 18-19) (citing Gjestvang Tr. 15; Cohen Tr. 8; Sinn Tr. 11; Mattfield Tr. 12-15; Pankiewicz Tr. 21, 26-28; Boutin Tr. 14; Carter Tr. 13.)   In addition, as discussed herein, the Bankruptcy Court found Mr. Jonak to be engaging in the unauthorized practice of law.  (<u>Id.</u> at 23.)  These actions fall squarely

within the enumerated prohibitions of § 110(e)(B)(i)-(vii) such that Chief Bankruptcy

Judge Kishel observed, "[t]he matchup between the sorts of advisories that Jonak gave to

various ALC customers . . . to the types of advice prohibited by section 110(e)(2)(B) is

almost eerie." (Id. at 34.)

In any event, Appellants do not challenge the Bankruptcy Court's findings that

they violated the specific provisions of § 110 – instead, they simply argue that this

provision is inapplicable to them, because of their contention that they are not bankruptcy

petition preparers. Although Jonak contends that he merely provided "a referral to

professionals who do the actual work" (Appellants' Br. at 12 [Doc. No. 13]), the evidence

demonstrates otherwise. Moreover, comments to the Minnesota Rules of Professional

Conduct define a legal service plan as a "prepaid or group legal service plan . . . that

assists prospective clients to secure legal representation." Minn. R. of Prof'l Conduct 7.2,

Comments [6]-[7]. Lawyer referral services are defined as "any organization that holds

itself out to the public as a lawyer referral service." Id. While lawyer referral services

and legal service plans may communicate with prospective clients, any such

communications, including advertising, must be consistent with the rules and not be false

or misleading. Id. The Rules of Professional Conduct further provide that

communications "must not be directed to a person known to need legal services in a

particular matter," but must generally inform potential plan members of "another means

of affordable legal services." Id. 7.3, Comment [8]. The evidence demonstrates that Mr.

Jonak's services do not conform to these requirements: he did not sell pre-paid legal

services to the Debtors (APP25, Stip. of Facts ¶ 12), he targeted his advertising directly at

persons seeking bankruptcy relief (APP55-75), did not provide unbiased attorney referrals (APP26, 28, Stip. of Facts ¶¶ 14, 21), and referred the Debtors almost exclusively to a single typist.  (Order at 30.)  Whatever the nomenclature used by Mr. Jonak to describe his services, the Bankruptcy Court correctly found him and his business entities to be bankruptcy petition preparers, operating in violation of § 110.

For the additional reason that ALC has not appealed the findings of violations of § 110(b)(1), (b)(2), (c), (f), and (h)(2), and because the evidence demonstrates such violations, the ruling of the Bankruptcy Court is affirmed with respect to the Trustee's § 110 claim.

Finally, the relief granted by the Bankruptcy Court based on the § 110 violations is proper and is affirmed.  Pursuant to § 110(h)(3), the Bankruptcy Court ordered Appellants to surrender the monies paid to them by the Debtors.  (Order at 45-46.)   The parties stipulated to these amounts.  (APP23-24, Stip. of Facts ¶ 9.)  In addition, citing § 110(j), the Bankruptcy Court properly issued an injunction against 3rd Millennium and Mr. Jonak, "personally and through the instrumentality of any other artificial business entity," prohibiting them from committing any future violations of § 110.  (Order at 47.)   The Bankruptcy Court awarded liquidated damages pursuant to § 110(i)(1)(B).  (Id.)  As the court noted, that provision requires an award to the Debtors in each case of the greater of $2,000 or twice the amount of the fee paid by the Debtors in each case.  (Id.)  Because the largest such fee was $680, the Bankruptcy Court awarded the greater amount of $2,000 per case.  These liquidated damages are mandated by statute.  All other relief awarded by the Bankruptcy Court is proper and is affirmed.

22

### B.    Sections 526-28: Debt Relief Agency

A "debt relief agency" includes "any person who provides any bankruptcy assistance" to a consumer debtor for valuable consideration, subject to certain exceptions. 11 U.S.C. § 101(12A).  "Bankruptcy assistance" is defined as "any goods or services sold or otherwise provided to an assisted person with the express or implied purpose of providing information, advice, counsel, document preparation, or filing, . . . with respect to a case or proceeding under this title."  Id. § 101(4A).  Pursuant to 11 U.S.C. § 526, the a debt relief agency shall not

> (1) fail to perform any service that such agency informed an assisted person or prospective assisted person it would provide in connection with a case or proceeding under this title;

> (2) make any statement, or counsel or advise any assisted person or prospective assisted person to make a statement in a document filed in a case or proceeding under this title, that is untrue or misleading, or that upon the exercise of reasonable care, should have been known by such agency to be untrue or misleading;

> (3) misrepresent to any assisted person or prospective assisted person, directly or indirectly, affirmatively or by material omission, with respect to--

>> (A) the services that such agency will provide to such person; or

>> (B) the benefits and risks that may result if such person becomes a debtor in a case under this title; or

> (4) advise an assisted person or prospective assisted person to incur more debt in contemplation of such person filing a case under this title or to pay an attorney or bankruptcy petition preparer a fee or charge for services performed as part of preparing for or representing a debtor in a case under this title.

Under 11 U.S.C. § 527, a debt relief agency must make certain disclosures to assisted persons.  They must provide notice of the various chapters available in bankruptcy, as well as notice that all information required of an assisted person must be complete, accurate, and truthful.  11 U.S.C. § 527 (a)(1)-(2).  In addition, a debt relief agency must provide notice to an assisted person stating that an attorney or debt relief agency must provide a written contract specifying the work to be performed and the cost. Id. § 527(b).  A debt relief agency must also provide notice to the assisted person on how to provide certain disclosures in bankruptcy.  Id. § 527(c).  Finally, a debt relief agency is required to maintain a copy of all such required notices for a period of two years.  Id. § 527(d).

Section 528 of the Bankruptcy Code requires certain disclosures that are "intended to combat the problem of inherently misleading commercial advisements – specifically, the promise of debt relief without any reference to the possibility of filing for bankruptcy, which has inherent costs." Milavetz, Gallop & Milavetz, P.A. v. United States, 559 U.S. 229, 250 (2010).   This provision is "expressly concerned with advertisements pertaining to 'bankruptcy assistance services,' 'the benefits of bankruptcy,' 'excessive debt, debt, collection pressure, or inability to pay any consumer debt.'" Id. (citing §§ 528(a)(3) & (b)(2)).  Specifically, a debt relief agency must clearly and conspicuously disclose in advertisements for "bankruptcy assistance services" or the "benefits of bankruptcy" that such services or benefits are with respect to bankruptcy relief under the Bankruptcy Code. 11 U.S.C. § 528(a)(3).  In addition, a debt relief agency must disclose that its "assistance may involve bankruptcy relief." Id. § 528(b)(2)(A).  Moreover, such advertisements

must also include the following clear and conspicuous disclaimer: "'We are a debt relief agency. We help people file for bankruptcy relief under the Bankruptcy Code' or a substantially similar statement." Id. § 528(a)(4) & (b)(2)(B). Finally, § 528 requires that debt relief agencies provide assisted persons with a written contract explaining what services are to be provided and what fees are to be paid. Id. § 528(a)(1) & (2).

Remedies for violations of §§ 526-28 may take the form of a civil action by the debtor to recover actual damages, including any fees already paid. 11 U.S.C. § 526(c)(2). In the case of intentional violations, or a pattern or practice of clear and consistent violations, the court may enjoin the violation or impose an appropriate civil penalty, either *sua sponte* or at the request of the United States trustee or the debtor. Id. § 526(c)(5).

The Bankruptcy Court found that Mr. Jonak violated §§ 526(a)(1)-(a)(3) and 527(a)(1)-(2), and enjoined ALC from future violations of §§ 526-28. (Order at 38-45.) The Bankruptcy Court did not impose additional monetary penalties on Appellants for violations of these provisions, finding the § 110 disgorgement and award of liquidated damages sufficiently punitive. (Id. at 48.)

On appeal, Mr. Jonak now concedes that he operates as a debt relief agency and is subject to §§ 526-28. (Appellants' Br. at 14 [Doc. No. 13].) Jonak further admits to violating the requirement that his advertisements disclose that his businesses operate as debt relief agencies. However, he argues that he did not violate any of the other debt relief agency provisions identified by the Bankruptcy Court. (Id. at 14-16.) Specifically, Mr. Jonak claims that he did not misrepresent his services, did not cause untrue or

misleading statements to be filed by the Debtors, and that he provided the notices

required by § 527(a).  (<u>Id.</u>)   Accordingly, he seeks remand so that the penalties imposed

by the Bankruptcy Court may be modified.  (<u>Id.</u> at 16.)

        **1.**     **Notices**

       Mr. Jonak admits that he violated § 528(a)(4).  (<u>Id.</u> at 14.)   This provision requires

a debt relief agency to clearly and conspicuously include in any advertisement the

specific language "We are a debt relief agency.  We help people file for bankruptcy relief

under the Bankruptcy Code."  11 U.S.C. § 528(a)(4).  As the Trustee notes, because this

Court may affirm on any basis supported by the record, Jonak's admission that he

violated § 528(a)(4) provides a basis for affirming the Bankruptcy Court's ruling on the

Trustee's § 528 claim.  <u>See</u> <u>Fullington v. Pfizer, Inc.</u>, 720 F.3d 739, 747 (8th Cir. 2013)

(noting that an appellate court may affirm the lower court's dismissal on any basis

supported by the record).  Nevertheless, the Court considers Appellants' specific

challenges to the ruling concerning other claims under § 528, as well as claims under §§

526-27.

       Mr. Jonak does not admit to violating § 528(a)(3).  Similar to § 528(a)(4),

discussed above, this provision requires a debt relief agency to clearly and conspicuously

state in any advertisements that the services or benefits it offers are with respect to

bankruptcy relief under the Bankruptcy Code.  The Court agrees with the Bankruptcy

Court that while references to "bankruptcy" and "a low cost bankruptcy discharge"

arguably refer to bankruptcy relief under the Bankruptcy Code, the statute is literal in its

directive.  (Order at 41, n.34.)   Accordingly, by failing to provide the clear and

conspicuous statement, Jonak violated § 528(a)(3). The Bankruptcy Court's ruling as to this claim is affirmed.

In addition, the evidence shows no disputed issues of fact with respect to Appellants' violation of 11 U.S.C. § 527(d). This provision requires a debt relief agency to retain a copy of the notices required under § 527(a) for two years. Mr. Jonak did not produce these notices and the mere act of occasionally handing out the processing center's Questionnaire – which did include the notices required by § 527(a) – does not constitute compliance. To the extent that Jonak handed out the Questionnaires, they were the product of his processing center typists, and not evidence of his own compliance, nor did Jonak personally provide the Questionnaires to every customer. (APP25, Stip. of Facts ¶ 5.)

### 2. Misrepresentations

As to Mr. Jonak's appeal of the Bankruptcy Court's ruling that he misrepresented his services to the Debtors in violation of § 526(a)(3)(A), and that he failed to clearly and conspicuously disclose the services to be rendered in violation of § 528(a)(1)(A), the evidence in the record fully supports Chief Bankruptcy Judge Kishel's ruling. As noted, the use of the word "law" in Mr. Jonak's "Affordable Law Center" business misrepresented Jonak's services – he is not an attorney and is unable to provide legal services. See In re Ali, 230 B.R. at 482. In addition, Mr. Jonak advertised in the bankruptcy attorney section of telephone books, claiming to offer "Bankruptcy/Credit Restoration" (APP62-66, Jonak Dep., Ex. 3), and advertised in newspapers under the "Bankruptcy" category. (APP70-75, Jonak Dep., Ex. 5.) The Bankruptcy Court further

found that Jonak's ads fail to fully disclose the legal plan or referral services that Jonak claims to provide, and that Jonak's flat fee for bankruptcy services deceptively fails to reference the additional costs for a typist or an attorney.  (Order at 38.)   Moreover, although Mr. Jonak's documentation to customers promised "start to finish" services, debt settlement, credit counseling, and social security services (APP27, Stip. of Facts ¶ 17), he was not licensed, in fact, to provide any debt settlement or counseling services.  (Id. ¶ 18.) Moreover, as the Bankruptcy Court found, Mr. Jonak significantly misrepresented his services by characterizing his services as a "legal plan."  (Order at 37.)  The evidence shows that Mr. Jonak did not procure any legal representation on the Debtors' behalf.

In addition, this Court agrees with the Bankruptcy Court that certain acknowledgments and self-serving disclaimers in the ALC documents – "I have not received legal advice" (APP125) and  "I do not believe the adverti[s]ing I responded to was misleading in any way" (APP126) – were designed to circumvent the Bankruptcy Code's prohibitions in § 110 through forced admissions.  (Order at 38.)  These disclaimers underscore Mr. Jonak's efforts to evade the requirements of the Bankruptcy Code.

To the extent that Mr. Jonak argues that summary judgment is precluded because the Bankruptcy Court lacked undisputed evidence that Jonak's "services would be exclusively handled by its staff without consulting or working with qualified professionals" (Appellants' Br. at 15 [Doc. No. 13], this argument fails.   While evidence is viewed in the light most favorable to the non-moving party, Enter. Bank, 92 F.3d at 747, the non-moving party must set forth specific facts in the record showing a genuine

issue of disputed fact.  <u>Anderson</u>, 477 U.S. at 256.  Jonak has offered no evidence to support an inference that he orally informed customers that debt negotiation and credit restoration services would be referred to legally qualified persons.  Accordingly, the Bankruptcy Court's ruling on these claims is affirmed.

### 3.    Fostering the Filing of Untrue or Misleading Statements

The Bankruptcy Court also found that Mr. Jonak caused the Debtors to make untrue or misleading statements in their bankruptcy documents, in violation of 11 U.S.C. § 526(a)(2).  (Order at 42-45.)  Neither Jonak's role nor fee were disclosed in the Statement of Financial Affairs submitted in 15 of the 18 cases.  (APP474, APP545, APP591, APP633, APP677, APP738, APP803, APP870-71, APP986, APP1061, APP1112, APP1164, APP1219, APP1285.)  As noted by the Trustee, omitting the role of a bankruptcy preparer in bankruptcy filings constitutes a statement made in a document that the preparer knew was misleading under § 526(a)(2).  <u>In re Peckham</u>, No. 9:13-bk-04690-FMD, 2013 WL 5984467, at * 4 (Bankr. M.D. Fla. Nov. 12, 2013).  In contrast, as the Bankruptcy Court observed, the processing center – which charged a significantly smaller fee – was disclosed in each case.  (Order at 43.)  Because Mr. Jonak provided advice on completing the forms and often provided the typist's Questionnaire to customers, the Bankruptcy Court properly concluded that Mr. Jonak had ample opportunity to ensure that disclosure was made.  (<u>Id.</u>)  Accordingly, the Bankruptcy Court's ruling on this basis for the § 526 claim is affirmed.

### C.       The Scope of the Injunction

The Bankruptcy Court enjoined Jonak from "providing any bankruptcy assistance within the meaning of § 101(4A) to an assisted person for compensation, without giving all disclosures required by 11 U.S.C. §§ 527 and 528(a), with the full wording and content specified by those provisions."  (Order at 54, ¶ g.)  The injunction does not extend beyond filing a bankruptcy case in the District of Minnesota.  (<u>Id.</u> at 52-55.)  Moreover, the entire scope of the Order concerns conduct related to the services offered with regard to filing bankruptcy cases.  (<u>Id.</u>)  The Order cites 11 U.S.C. §§ 110(j)(2)(A) and 526(a) in support of the ruling.  (<u>Id.</u> at 52.)  Two subsections of the injunction, (h) and (i), (<u>id.</u> at 54), prohibit for-profit referrals to attorneys, as discouraged by the Minnesota Rules of Professional Conduct, and (j) refers to bankruptcy-related actions.  Accordingly, this Court finds that the injunction is sufficiently clear in its scope, is supported by law and is affirmed.

**THEREFORE, IT IS HEREBY ORDERED that:**

1.       Appellants' Appeal from Bankruptcy Court [Doc. No. 1] is **DENIED**; and

2.       The Bankruptcy Court's March 29, 2013 Order and March 29, 2013

Judgment are **AFFIRMED**.

Dated: May 28, 2014

<u>s/Susan Richard Nelson</u>
SUSAN RICHARD NELSON
United States District Judge